# Von Kaenel Unemployment Compensation Case.

## Von Kaenel, Appellant, *v.* Unemployment Compensation Board of Review.

174

Argued April 13, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*William L. Sixsmith,* with him *Jason Richardson,* for appellant.

*Roland M. Morgan,* with him *William L. Hammond,* Special Deputy Attorney General, *T. McKeen Chidsey,* Attorney General and *R. Carlyle Fee,* Special Deputy Attorney General, for appellee.

OPINION BY FINE, J., July 23, 1948:

Charles Von Kaenel, claimant, appeals from the decision of the Unemployment Compensation Board which

concluded that he was disqualified from receiving benefits because his unemployment was due to a voluntary suspension of work resulting from an industrial dispute [§402(d) of the Unemployment Compensation Law]. The question for determination is whether the employer's appeal to the board from the referee's decision granting benefits was within the statutory period and in compliance with the requirements of §502.* The decision of the board must be reversed.

Appellant was employed by the Pittsburgh Motor Coach Company, Pittsburgh, and was a member of Local 1084 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employes of America, associated with the American Federation of Labor. On September 24, 1946, members of a union representing the employes of the Duquesne Light Company went out on a strike, as did maintenance employes of the Equitable Auto Company which performed maintenance work for the Pittsburgh Motor Coach Company. On September 27, 1946, appellant reported for work and discovered a picket line around his employer's garage. He crossed the picket line and took his bus out on schedule, but was later informed to return his bus to the garage because of threats of violence to the bus operators. Appellant complied with this request and on October 10, 1946,

---

* Section 502 provides: "Where an appeal from the determination or revised determination, as the case may be, of the department is taken, a referee shall, after affording the parties reasonable opportunity for a fair hearing, affirm, modify, or reverse such findings of fact and the determination or revised determination, as the case may be, of the department as to him shall appear just and proper. The parties shall be duly notified of the referee's decision, and the reasons therefore, *which shall be deemed the final decision of the board,* unless within ten days after the date of such decision the board acts on its own motion, *or upon application,* permits any of the parties to institute a further appeal before the board. A memorandum of testimony of any hearing before any referee shall be made and be preserved for a period of two years. As amended 1942, Ex. Sess., April 23, P. L. 60, § 5." 43 PS § 822.

registered for work and filed an application for benefits effective September 27, 1946. Subsequent thereto, he filed a waiting week claim for the week ending October 3, 1946, and for subsequent weeks. On October 14, 1946, the strike was settled and appellant resumed his employment.

On December 2, 1946, the bureau disallowed appellant's claim on the ground that claimant's employment was due to a voluntary suspension of work resulting from an industrial dispute and applied the disqualification provided by §402(d). On December 12, 1946, the claimant appealed to the referee who, by decision of May 15, 1947, reversed the bureau and awarded benefits. On June 16, 1947, twenty-two (22) days after the time for appeal had expired, the employer filed its appeal with the board. Thereupon a hearing was scheduled and held by the board, the notice of which set forth the issues involved as, "Is the claimant's unemployment due to voluntary suspension of work resulting from an industrial dispute within the meaning of Section 402(d) of the Law? Has the appellant filed a proper appeal from the decision of the Referee within the meaning of Section 502 of the Law?" At that hearing counsel for the employer, duly sworn, testified that a letter was mailed to the Pennsylvania State Employment Service Office, Pittsburgh, Pa., on May 20, 1946, a copy of which was admitted in evidence,—all without claimant's objection. The letter stated, *inter alia*: "We have received a copy of the Referee's decision in the above entitled matter and it is our desire to take an appeal from that decision. Will you please furnish us with appropriate papers for this purpose." The entire testimony of counsel concerning the mailing is very brief, as follows: "By Mr. Fee to Attorney Anderson: Q. After you had prepared the letter of May 20, 1947, what did you do in order to have it go out? A. It was sent through our regular mail service. We have an office boy to put the letters in the mail. Q. You put it in the proper place

to be picked up? A. I did. Q. Was the letter returned to your office? A. It was not. We made a search and there is no record that it was not mailed. The original letter is not in the office.''

A continued hearing was held on September 10, 1947, notice of which set forth the same issues as in the previous notice. At the second hearing no testimony was taken on the validity of the appeal whereupon the parties proceeded to the merits of the case. The board by a decision dated October 16, 1947, reversed the referee, made no specific finding on the validity of the appeal and disallowed benefits. It is this appeal by the employer to the board from the referee's decision which is the subject of the present controversy.

Suffice it to say that the employer has not complied with the statutory requirement that an appeal be taken within ten (10) days from the decision of the referee. That statutory requirement is mandatory and cannot be waived by agreement: *Devlin v. Grabler Mfg. Corp.,* 151 Pa. Superior Ct. 216, 30 A. 2d 138. It was incumbent upon the employer to meet the burden cast upon it of showing conduct emanating from the officers charged with administering the unemployment compensation law which misled the employer to his detriment. *Tuttle Unemployment Compensation Case,* 160 Pa. Superior Ct. 46, 49 A. 2d 847; *Turner Unemployment Compensation Case,* 163 Pa. Superior Ct. 168, 60 A. 2d 583. Cf. *Layton v. Unemployment Compensation Board of Review,* 156 Pa. Superior Ct. 225, 40 A. 2d 125.

The burden was upon the employer to show facts which would place it within the principle that where a party has been prevented from doing an act through fraud or its equivalent, i. e., ignorant or negligent acts of an administrative official, power exists to allow an appeal *nunc pro tunc* if prosecuted within a reasonable time. The employer attempted to meet this burden by introducing into evidence the letter hereinabove recited. The compensation authorities have no record of receipt

of that letter; nor is there satisfactory proof it was mailed; all the evidence thereon is negative. It is clear that the letter was not an appeal nor was it intended to serve as an appeal. It merely evidenced a present desire or intent to take an appeal which could either be perfected or abandoned before the expiration of the appeal period. Assuming that the letter was sent requesting forms of appeal, the employer could not thus so easily shed its burden of effecting a timely appeal; it should have pursued its request with alacrity and diligence. Moreover, it was not necessary for it to use the forms provided by the compensation authorities. Nor can the responsibility for the lateness of the appeal be shifted to the administrative agency, particularly where, as here, employer's counsel, experienced in the law, gave only passing attention to an expiring right.

The employer, instead of perfecting its appeal within the ten-day period as it should have done, waited until June 10, 1947, before making further inquiry. The delay was fatal in these circumstances. The board erred in concluding the letter of May 20, 1947, extended the time for filing the appeal and in permitting the appeal to be in effect filed *nunc pro tunc*. In *Turner v. Unemployment Compensation Board of Review,* supra, the board refused to entertain an appeal not filed within the ten-day limitation because the limitation provision is mandatory and it was without power to waive the provision except in circumstances not present there, and likewise absent here. If illness of counsel in the *Turner* case could not be excusatory of delay, surely the inattention of counsel in the present case cannot be successfully maintained in support of an appeal *nunc pro tunc*.

True, §501(e) was involved in the *Turner* case, whereas in the present controversy §502 of the Act is the pertinent provision. There is a variance in the verbiage of the two sections and in the scope and purpose thereof, yet the reason for the rule of timely appeal is identical.

The fact that claimant made no objection to the validity of the appeal at the hearings before the board is of no moment. Want of jurisdiction over the subject matter may be questioned for the first time on appeal. *Patterson's Estate*, 341 Pa. 177, 180, 19 A. 2d 165. Claimant's silence could not confer jurisdiction, already lost to the board. Had he so desired, an agreement by him to contest the case on the merits could not breathe life into the expired power to hear and determine. Nor could the board, as here occurred, waive or dispense with the commands of the statute. In *Devlin v. Crabler Mfg. Corp.*, 151 Pa. Superior Ct. 216, 30 A. 2d 138, we said: "We find no authority to the effect that the stipulation which was filed after the time for taking an appeal by claimant had expired could be a substitute for an appeal, or that it could act as an appeal nunc pro tunc. . . . It is the general rule that statutes requiring appeals to be taken and perfected within a certain time are mandatory and jurisdictional, and that the time cannot be extended by agreement or stipulation. 3 C. J. §1083, p. 1074; 4 C. J. S., Appeal and Error, §458."

The board lacked jurisdiction to hear the appeal on the merits and committed error in so doing.

The decision of the board is reversed; the award of the referee is reinstated.